UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS — EASTERN DIVISION

CASILLE EDWIN FONSECA, Plaintiff,

v.

MASSACHUSETTS STATE POLICE and STATE POLICE ASSOCIATION OF MASSACHUSETTS, Defendants.

Civil Action No.: ____________________ (to be assigned)

**ATTACHMENT A — SUPPLEMENTAL RESPONSES TO PRO SE 7 COMPLAINT**

**DRAFT FOR PLAINTIFF REVIEW**

This attachment supplements the specified fields of Plaintiff's Pro Se 7 Complaint for Employment Discrimination. All factual allegations are made on information and belief unless otherwise stated. Plaintiff requests relief only to the extent authorized by applicable law. References to MSP identify Massachusetts State Police. References to MSPA identify the State Police Association of Massachusetts, the union referred to as MSPA in Plaintiff's materials.

## 1. SECTION III(A) — OTHER ACTS

1. Plaintiff alleges that MSP suspended him without pay following an off-duty incident on September 30, 2024; pursued disciplinary proceedings concerning that incident and alleged firearm storage; and threatened termination and a dishonorable separation classification. Plaintiff alleges that these actions culminated in a retirement he regarded as involuntary.

2. Plaintiff alleges that MSPA failed to act on his request for suspension-with-pay protections under Article 43, made shortly after the incident, and that he experienced delays or limitations in union-funded representation. Plaintiff contends that the union's conduct was discriminatory or retaliatory. The acts alleged are described below. See supporting union correspondence and the Article 43 request.

3. Plaintiff alleges that the suspension or withholding of his License to Carry (LTC) restricted his ability to pursue armed security or law-enforcement employment. A Framingham District Court order dated January 14, 2025, addresses return of his LTC. See the supporting court order for its terms.

## 2. SECTION III(B) — DATES OF ALLEGED DISCRIMINATORY ACTS

4. Plaintiff identifies the period beginning in or about October 2024, following the September 30, 2024 incident, through the circumstances of his retirement in January 2026. Relevant reported dates include: October 2024 (unpaid suspension and Article 43 request); March 24, 2025 (Internal Affairs interview); October–December 2025 (disciplinary, representation, and retirement-classification communications); January 9, 2026 (Plaintiff's original retirement date); and January 29, 2026 (the effective retirement date after the Retirement Office adjusted the date to align with a pay period). See supporting suspension, interview, correspondence, and retirement records.

5. The September 30, 2024 casino incident provides background to the employment actions alleged here. See supporting employment records, correspondence, and EEOC charge materials for the dates and nature of each Defendant's actions. The January 29, 2026 administrative adjustment of the retirement effective date is described separately from the alleged pressure to retire.

## 3. SECTION III(D) — BASIS OF DISCRIMINATION

6. Plaintiff identifies as Black/African American and was born in 1963. Plaintiff alleges that race and age were motivating factors in adverse employment treatment by MSP and in discriminatory conduct by MSPA, including allegedly unequal disciplinary treatment, handling of representation requests, and events leading to his involuntary retirement.

7. Plaintiff refers to publicly reported discipline involving another trooper as potential comparative evidence concerning disciplinary treatment. He offers that reported outcome for comparison with his treatment; the comparison depends on the material circumstances of the respective cases.

## 4. SECTION III(E) — STATEMENT OF FACTS

8. Plaintiff retired after 36 years of service as a Massachusetts State Police trooper. His reported final three years of gross compensation, including overtime and details, were $267,000, $267,000, and $205,000, respectively.

9. On September 30, 2024, while off duty, Plaintiff was involved in an incident at a casino in Lincoln, Rhode Island, followed by police action. Plaintiff alleges that casino security requested police assistance after reporting an extremely intoxicated individual, which caused responding police to approach the incident in a heightened state of alert. Plaintiff further alleges that security told police he was running through the woods. He denies that account and states that he was walking along the street toward a Rhode Island State Police barracks to seek assistance because police would not allow him to return to his car to retrieve his phone. Plaintiff disputes the reliability of these reports and some witness accounts and states that he has not received access to casino surveillance footage referenced during the disciplinary proceedings.

10. Plaintiff reports that witness statements were obtained in October 2024 and again in January 2025, with unresolved inconsistencies. He states that his request shortly after the incident for Article 43 suspension-with-pay treatment was not acted upon by MSPA. See supporting witness statements and the Article 43 request.

11. Plaintiff's last State Police paycheck was dated October 4, 2024. See supporting payroll and suspension records for the covered pay period and the effective date of unpaid suspension.

12. A Framingham District Court judge entered an order dated January 14, 2025, concerning return of Plaintiff's LTC. Plaintiff alleges that MSP did not honor the order and that his LTC had still not been returned as of May 2026, restricting his ability to pursue armed positions requiring a valid LTC. See the supporting court order and related correspondence.

13. At a March 24, 2025 Internal Affairs interview, MSP questioned Plaintiff about a firearm left in a vehicle. Plaintiff asserts that troopers had received instructions during certain training sessions to leave firearms in vehicles. He identifies 2024 training sessions and witnesses in support of that account. See supporting documents concerning the interview and training.

14. Plaintiff reports delays in access to evidence and legal representation during the disciplinary process. He alleges that MSPA stated in writing that representation would be provided for his case but later disputed his request for representation. Plaintiff alleges that this change in position left him without the promised support when representation was needed. He identifies communications with MSPA representatives and assigned counsel, including Attorney Christina Ronan, concerning union funding, Trial Board proceedings, and retirement classification. See supporting correspondence for the language and dates of those communications.

15. In correspondence dated January 5, 2026, responding to counsel's December 2025 email, Plaintiff challenged the proposed dishonorable classification, requested the basis for the position, sought access to

referenced casino videos, raised his LTC concerns, and described financial and family hardship. See supporting correspondence dated January 5, 2026.

16. Plaintiff alleges that he was told that, unless he retired, he would have to proceed to the MSP Trial Board and face termination with loss of benefits. He alleges that both MSP and MSPA supported that position. Plaintiff states that he retired because he believed he would otherwise be terminated and subjected to a dishonorable separation classification. His original retirement date was January 9, 2026. The Retirement Office advised that the retirement date needed to align with a pay period and moved the effective retirement date to January 29, 2026. Plaintiff alleges these circumstances constituted constructive discharge. See supporting retirement records and related MSP and union correspondence.

17. Plaintiff alleges that the conduct described above was influenced by race discrimination, age discrimination, and/or legally protected retaliation. He relies on the facts described in this attachment and supporting documents concerning the acts attributable to each Defendant.

## 5. SECTION IV(A) — EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

18. Plaintiff filed two EEOC charges: Charge No. 523-2026-02998 concerning Massachusetts State Police, and Charge No. 523-2026-03265 concerning State Police Association of Massachusetts. See the original EEOC Form 5 charges and supporting EEOC records for the filing dates and original respondent designations. Copies of the original charges are included separately with the complaint.

19. The EEOC issued a Determination and Notice of Rights for each charge on July 16, 2026. Plaintiff reports receipt of both notices on July 16, 2026. Copies of both notices are attached separately as exhibits to the complaint. Plaintiff is filing within the applicable period calculated from receipt, subject to court rules.

## 6. SECTION V — RELIEF REQUESTED

20. Plaintiff seeks back pay, lost employment benefits, and interest as authorized by law for proven earnings losses caused by actionable discrimination or retaliation. His three-year reported gross earnings total $739,000, averaging approximately $246,333.33 annually. This historical average includes overtime and detail earnings and is not a guaranteed future wage rate.

21. Using October 4, 2024 as the starting point for this estimate, projected gross earnings not received through October 7, 2026 are approximately $495,000. This is an estimate, not a final damage calculation. See supporting payroll and suspension records. The final computation will address payroll coverage, expected overtime, work availability, pension entitlements, mitigation, and legally required adjustments. Plaintiff earned limited income driving for Uber. He reports that he initially paid to repair his Audi and that, after its engine failed, he incurred towing costs and made a down payment on an older vehicle for transportation. He describes the financial benefit of his Uber work as very small and his overall position after those vehicle costs as roughly breaking even. See supporting Uber income records and vehicle-expense documents. The final damages computation will separately identify Uber receipts, operating expenses, vehicle repair and towing costs, replacement-vehicle purchase costs, and any other employment earnings, unemployment or pension payments, with adjustments as legally appropriate.

22. Plaintiff alleges that the unavailability of his LTC prevented him from pursuing armed positions for which he otherwise qualified, and that he borrowed money from friends and family to meet living expenses and protect his home. Loan principal is not separately claimed as damages merely because it was borrowed; any recoverable consequential losses must be proved and legally attributable to actionable conduct. Plaintiff also reports selling his inoperable 2014 Audi for $1,000 while approximately $12,000 remained owed on the

vehicle, and applying the sale proceeds toward that debt. He describes the sale and continuing debt as part of his financial hardship. He seeks compensation for any proven vehicle-related loss only to the extent caused by actionable discrimination or retaliation and recoverable under the applicable law; the outstanding loan balance is not asserted as an automatic damages amount.

23. Plaintiff reports that $20 was deducted from his pay each pay period for the Police Benevolent Society. When he sought retirement proceeds, a Society representative initially said his account could not be located. Plaintiff states that payroll then confirmed the deductions, but the representative denied eligibility on the ground that he was retiring dishonorably. As of October 8, 2026, Plaintiff states that he has not received a written determination of his actual retirement disposition. He disputes the dishonorable classification and contends that his circumstances do not meet the criteria in the applicable MSP and union guidelines. Plaintiff requests an accounting of the deductions and benefits, correction of any unsupported retirement classification, and payment of any benefits due or refund of contributions if authorized by the governing terms. He seeks this relief to the extent attributable to Defendants' actionable conduct and legally available. See supporting payroll records, Society communications, and applicable MSP and union guidelines. Plaintiff requests production of any written retirement disposition on which the denial relied.

24. Plaintiff requests, to the extent legally available: (a) back pay and benefits; (b) front pay if reinstatement is not feasible, or reinstatement if appropriate; (c) correction of discriminatory employment records and appropriate retirement-related equitable relief; (d) compensatory damages for legally cognizable emotional distress, proven consequential financial losses, and related injuries; (e) prejudgment/postjudgment interest where authorized; (f) taxable costs and eligible fees; and (g) any other appropriate relief.

25. Plaintiff requests punitive damages only against any defendant and under any claim for which such damages are legally permitted and factually supported. Plaintiff does not seek punitive damages against MSP under Title VII. Plaintiff understands that ADEA remedies and sovereign immunity differ from Title VII remedies, and that not all requested categories of relief are available against every Defendant.

26. Plaintiff will provide a supported damages computation and relevant documents as required by the Federal Rules of Civil Procedure and court orders. No specific amount for emotional distress or punitive damages is asserted here without a supported basis.

**END OF ATTACHMENT A**